No. 48,705

STATE OF KANSAS, *ex rel.*, CURT T. SCHNEIDER, Attorney General, *Appellee,* v. ROBERT F. BENNETT, Governor of the State of Kansas, *et al., Appellants.*

(564 P. 2d 1281)

Opinion filed March 31, 1977.

*Charles N. Henson,* of Eidson, Lewis, Porter, and Haynes, of Topeka, argued the cause, and was on the brief for the appellants.

*John R. Martin,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

*Robert A. Coldsnow,* Kansas Legislative Counsel, was on the brief *amici curiae,* for the Kansas Senate, Kansas House of Representatives, and Kansas Legislative Coordinating Counsel.

The opinion of the court was delivered by

PRAGER, J.: This is an action in quo warranto brought in

Shawnee county district court by Curt T. Schneider, as attorney general, to oust the legislative members of the state finance council from the execution of certain statutory powers on various constitutional grounds. The district court granted a writ of quo warranto and defendants appealed. On March 14, 1977, this court entered an order reversing the case and entered judgment in favor of the defendants stating that our decision would be implemented by a formal opinion to be filed when prepared. This formal opinion sets forth our reasons for reversing the district court and entering judgment in favor of the defendants.

This is the third case before this court in the last twenty years challenging the constitutionality of various powers and duties of the state finance council. The first action was *State, ex rel., (Anderson) v. Fadely,* 180 Kan. 652, 308 P. 2d 537 (1957), in which the attorney general challenged the vesting of the administration of the state emergency fund in the state finance council. No other powers were questioned in that case, and this court upheld the legality of the finance council's powers regarding the state emergency fund. In the second action, *State, ex rel., (Schneider) v. Bennett,* 219 Kan. 285, 547 P. 2d 786 (1976), the attorney general attacked a variety of powers vested in the state finance council by statute on the grounds that the statutory provisions violated the separation of powers doctrine. In this opinion we will refer to that case as *Schneider I.* Since the issues in this case are directly related to the issues in *Schneider I* we should first briefly review what we held in that case.

*Schneider I* stands for the following general principles of law:

(1) The separation of powers doctrine does not in all cases prevent individual members of the legislature from serving on administrative boards or commissions created by legislative enactments. Individual members of the legislature may serve on administrative boards or commissions where such service falls in the realm of cooperation on the part of the legislature and there is no attempt to usurp functions of the executive department of the government.

(2) The separation of powers doctrine prohibits individual members of the legislature from serving on administrative boards or commissions where such service results in the usurpation of powers of another department by the individual legislators.

(3) When a statute is challenged under the constitutional doctrine of separation of powers, the court must search for a usurpation by one department of the powers of another department on the specific facts and circumstances presented.

(4) A usurpation of powers exists where there is a significant interference by one department with operations of another department.

(5) In determining whether or not a usurpation of powers exists a court should consider (*a*) the essential nature of the power being exercised; (*b*) the degree of control by one department over another; (*c*) the objective sought to be attained by the legislature; and (*d*) the practical result of the blending of powers as shown by actual experience over a period of time.

*Schneider I* involved statutory powers vested in the state finance council relating to direct supervision and control over the operations of the state department of administration and its divisions. The exercise of these powers was held to be an unconstitutional usurpation of executive powers by the legislative branch in violation of the separation of powers doctrine. It was further held that the power exercised by the state finance council with respect to expenditures from the state emergency fund (75-3713 and 75-3713a) and the power to authorize the issuance of certificates of indebtedness under K. S. A. 1975 Supp. 75-3725a did not constitute a usurpation of executive power and hence were constitutional. These powers are not involved in the present action.

In *Schneider I* it was determined that the following powers of the state finance council were legislative in nature and could be delegated to the state finance council provided the legislature established adequate standards and guidelines to control the state finance council in their exercise: The power to authorize expenditures from special revenue funds which exceed the limits of expenditures authorized by statute; the power to increase the fixed positions of employment authorized for state agencies; and the power to approve the receipt and expenditure of federal or other funds not authorized by specific statutes. It was held that the legislature had failed to establish adequate standards or guidelines to govern the state finance council in the exercise of these powers.

The opinion of the court in *Schneider I* was filed on March 6, 1976, while the legislature was in session. The legislature immediately responded to that decision by the enactment of Chapter 388, Laws of 1976, the provisions of which may now be found in K. S. A. 1976 Supp. 75-3711, 75-3711a, and 75-3711c. Other statutes were also amended and, where pertinent, will be referred to in the course of this opinion. Essentially, in response to our opinion in *Schneider I,* the legislature vested solely in the governor those powers which the court had determined to be executive

powers and withdrew from the state finance council the power to act in those areas. This was accomplished by K. S. A. 1976 Supp. 75-3711 which provides in pertinent part as follows:

"75-3711. **Division of powers between governor and state finance council; vote upon matters of legislative delegation; application of guidelines.** (*a*) The governor shall:

"(1) Hear and determine appeals by any state agency from final decisions or final actions of the secretary of administration or the director of computer services.

"(2) Approve, modify and approve or reject proposed rules and regulations submitted by the secretary of administration as provided in K. S. A. 1976 Supp. 75-3706, and amendments thereto.

"(3) Make allocations to, and approve expenditures by a state agency, from any appropriations to the governor for that purpose, of funds for unanticipated and unbudgeted needs, under guidelines and limitations prescribed by K. S. A. 1976 Supp. 75-3711c or other legislative enactment enhancing or altering K. S. A. 1976 Supp. 75-3711c.

"(4) Exercise powers and perform functions specified for the state finance council or governor by the Kansas civil service act.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(*c*) Whenever statutes provide for any matter to receive state finance council action, the same shall be made a matter of business before said council, if and only if the matter is characterized as a legislative delegation, and in other such cases the governor shall exercise the function specified for the state finance council by applying the guidelines and limitations of K. S. A. 1976 Supp. 75-3711c or other legislative enactment enhancing or altering the same."

Those powers and functions which the court in *Schneider I* characterized as legislative functions were again vested in the state finance council, subject to be exercised only when certain specified legislative standards or guidelines were satisfied. The statute which sought to accomplish this objective was K. S. A. 1976 Supp. 75-3711c which provides as follows:

"75-3711c. **Guidelines for exercise of certain functions; characterization of legislative delegations and executive functions.** (*a*) The following matters of business before the state finance council are hereby declared to be matters characterized as legislative delegations:

"(1) Increase of expenditure limitations on special revenue funds imposed by legislative act.

"(2) Grant of approval pursuant to K. S. A. 1976 Supp. 75-3711a.

"(3) Exercise of functions specified in K. S. A. 1976 Supp. 75-3712, 75-3713, 75-3713a or 75-3725a.

"(4) Exercise of the functions specified in K. S. A. 48-938.

"(*b*) All matters of business provided by this act to be performed by the governor in lieu of the state finance council are hereby declared to be executive functions to be exercised by the executive department subject to subsequent enactment by the legislature.

"(c) The matters specified in subsection (a) shall be approved, authorized or directed by the governor and a majority vote of the legislative members of the state finance council and such approval, authorization or direction shall be given only when the legislature is not in session upon findings, in addition to any enhancement or alteration thereof by legislative enactment, that:

"(1) Unforeseeable occurrence or unascertainable effects of a foreseeable occurrence characterize the need for the requested action, and delay until the next legislative session on the requested action would be contrary to paragraph (3) of this subsection.

"(2) The requested action is not one that was rejected in the next preceding session of the legislature, and is not contrary to known legislative policy.

"(3) In cases where the action is requested for a single state agency, the requested action will assist the state agency in attaining an objective or goal which bears a valid relationship to powers and functions of the state agency."

In K.S.A. 1976 Supp. 75-3711a the state finance council was granted the authority to approve the receipt and expenditure of grants of moneys and funds appropriated under any federal or state act or from any other source. This section provided as follows:

"75-3711a. **Receipt and expenditure of grants and moneys from federal or state agencies or other sources not otherwise authorized by law; approval of finance council; guidelines; limitation on commitments.** (a) Any state agency not otherwise specifically authorized by law may, with the approval of the state finance council, receive grants of money and funds appropriated under any federal act or from any other source.

"(b) Any state agency not otherwise specifically authorized by law may, with the approval of the state finance council, contract with and receive, and/or spend or transfer, moneys from other state or federal agencies.

"(c) In addition to the findings required by subsection (c) of K. S. A. 1976 Supp. 75-3711c, functions under (a) and (b) of this section shall be exercised only after a finding by the governor and a majority vote of the legislature members of the state finance council that the program proposed will benefit the health or welfare of the people of this state.

"(d) No authorization under this section shall undertake to give any vested commitment that a future legislative enactment will provide any additional state funds to the purpose of the proposed program."

Other statutory amendments enacted in the 1976 session are not pertinent to the issues raised in this appeal.

In his petition in this case the attorney general challenged as unconstitutional the exercising of the following powers of the state finance council:

(1) The power of the finance council to authorize state agencies to exceed limitations on expenditures of appropriated special revenue funds. (K. S. A. 1976 Supp. 75-3711c [a] [1].)

(2) The power to authorize a state agency to exceed a limitation on expenditures of a reappropriated balance of a state general fund appropriation. This power is granted under sections of various appropriation acts.

(3) The power to authorize a state agency to exceed a limitation imposed by an appropriation act on the number of personnel positions which may be funded by the act. (For example, Laws of 1976, Chapter 24, Section 69.)

(4) The power to authorize state agencies to receive and spend federal and other moneys, when not otherwise specifically authorized by law. (K. S. A. 1976 Supp. 75-3711a and 75-3711b.)

(5) The power to authorize transfer of funds between items of appropriation from the Kansas educational building fund. (Laws of 1976, Chapter 24, Section 76 [b].)

In the district court the attorney general challenged the exercise of these powers by the state finance council on several grounds. First, it was contended that direct appointment by legislative act of members of the legislature to a body such as the state finance council which exercises executive power was in violation of Article 2, Section 1, and Article 15, Section 1, of the Kansas Constitution. Second, it was urged that the direct appointment of legislators to a body with executive powers to be exercised coextensively with the governor is in violation of Article 1, Section 3, of the Kansas Constitution which provides that the supreme executive power of this state shall be vested in a governor, who shall be responsible for the enforcement of the laws of this state. Third, it was urged that the standards by which the state finance council was to be guided in the exercise of these powers were impermissibly vague and ambiguous, and thus resulted in an unconstitutional delegation of legislative power to an executive or administrative body. Fourth, as to the authority to transfer line items of appropriation from the Kansas educational building fund, this power was clearly executive in nature and could not be exercised by the legislative members of the state finance council.

In its memorandum decision and judgment granting relief by way of quo warranto, the district court followed our decision in *Schneider I* and held that the challenged powers numbered 1, 2, 3, and 4 above are all legislative powers. The court further held that the power to authorize a transfer of funds between items of appropriation from the Kansas educational building fund set forth in paragraph 5 is an executive power. The district court granted judgment in favor of the attorney general on the grounds that the standards and guidelines established by the 1976 legis-

lature for the exercise of the challenged powers numbered 1 through 4 above were inadequate legislative standards. As to the power to authorize transfer of funds between items of appropriation from the Kansas educational building fund, the district court held that such power was exclusively executive in nature and could not be exercised by the legislative members of the state finance council.

On this appeal the attorney general again raises a number of the same legal issues previously raised and determined in *Schneider I* pertaining to the right of the legislature to designate certain of its members to serve and their right to serve on the state finance council. In regard to these points we adhere to the conclusions previously reached in *Schneider I.* We do not deem it necessary to consider those contentions further. In our judgment the district court correctly recognized the two fundamental issues to be determined in this action. They are: First, whether the legislative standards and guidelines established by the 1976 legislature to control the exercise of delegated legislative power by the state finance council are unconstitutionally vague and insufficient to sustain a delegation of legislative power. Second, whether participation by the legislative members of the state finance council in the exercise of the statutory authority of the council to authorize transfer of funds between items of appropriation from the Kansas educational building fund is unconstitutional as a usurpation of powers of the executive department by the legislature and hence a violation of the doctrine of separation of powers.

As to the first issue we agree with the conclusion of the district court that (1) the power to increase an expenditure limitation contained within an appropriation of special revenue funds; (2) the power to authorize a state agency to exceed a limitation in expenditure of a reappropriated balance of a state general fund appropriation; (3) the power to authorize a state agency to exceed a limitation imposed by an appropriation act on the number of personnel positions which may be funded by the act; and (4) the power to authorize state agencies to receive and spend money from federal grants or other sources, are legislative powers. These powers were discussed in depth and held to be legislative in nature in our opinion in *Schneider I.* As pointed out in *State, ex rel., (Anderson) v. Fadely,* supra, except as is restricted by the constitution, the legislature has the exclusive power to direct

how, when, and for what purpose the public funds shall be applied in carrying out the objects of the state government. Such legislative powers may be delegated to the state finance council provided legislative standards and guidelines are established to control the state finance council in the exercise of such power.

In *Schneider I* the only standard or guideline provided for the exercise of the power of the state finance council to approve expenditures from special revenue funds in excess of fixed statutory limitations was "where such excesses are the result of circumstances which could not reasonably have been foreseen when the legislature was in session." We held this standard to be insufficient to satisfy the constitutional requirement that the legislature may not delegate legislative power unless adequate standards are established for the exercise of such power. We pointed out that under that statute there was no standard which limited the finance council as to the amount or the subject matter of the expenditures which it might authorize. Since that opinion was filed the 1976 legislature in response thereto amended the statutes and provided the additional standards and guidelines which are contained in the statutes set forth above.

As we analyze the 1976 statutory provisions the new legislative standards and guidelines now provided are as follows:

(1) The state finance council may exercise its powers only when the legislature is not in session. (75-3711c.)

(2) The finance council may exercise its powers in a particular matter of business only if the matter is characterized by the legislature as a legislative delegation. (75-3711.) 75-3711c which is set forth in full above declares the following matters of business before the state finance council to be matters characterized as legislative delegations: (*a*) Increase of expenditure limitations on special revenue funds imposed by legislative act; (*b*) grant of approval pursuant to 75-3711a which concerns the receipt and expenditure of grants of money and funds appropriated under any federal act or from other sources; (c) exercise of functions relating to the state emergency fund (K. S. A. 75-3712, 75-3713, 75-3713a) or the issuance of certificates of indebtedness under 75-3725a; and (d) allocation of funds from the state emergency fund pursuant to 48-938. Additional statutes characterize other matters as legislative delegations.

(3) The finance council can act only when it makes a specific finding that some unforeseeable occurrence or an unascertainable effect of a foreseeable occurrence characterizes the need for the requested action. (75-3711c [*c*] [1].)

(4) The finance council may act in cases where the action is requested for a single state agency only when the requested action will assist the state agency in attaining an objective or goal which bears a valid relationship to authorized powers and functions of the agency. This standard should be interpreted to

restrict the authority of the state finance council to authorize state agency action only in a general area in which the state agency has previously been authorized to act by the legislature. The finance council may not authorize action in areas not previously authorized by the legislature. (K. S. A. 75-3711c [c] [3].)

(5) The finance council may exercise its powers only when it finds that delay until the next legislative session on the requested action would be contrary to (or in some way obstruct or interfere with) the attaining of some authorized goal or objective of the state agency. (75-3711c [c] [1] and [3].)

(6) The finance council can exercise its powers only when the requested action is not one that was rejected in the next preceding session of the legislature, and is not contrary to a known legislative policy. (75-3711c [c] [2].) In this regard it is important to note that both the majority and minority leadership of the legislature are designated as members *ex officio* of the state finance council. (75-3708.) Prior to any meeting of the finance council a notice of each meeting and a copy of the proposed agenda must not only be mailed to each member of the finance council but also to each member of the legislature. Following a meeting of the finance council, the governor, as chairman, is required to cause minutes of the meeting to be prepared and to be sent to all members of the council, to each member of the legislature, and to others specified by statute. (75-3710.) We consider the statutory requirement of mailing a notice of a meeting and the agenda in advance of the meeting to each member of the legislature to be of significance. The legislative leadership and other members of the legislature should be fully familiar with legislative policies. It could reasonably be anticipated that the views of individual legislative members in regard to a particular matter would be vigorously communicated to the finance council. This requirement should serve as an effective restraint on the finance council in the exercise of its powers.

(7) Before authorization is given for the receipt and expenditure of federal or other funds, the state finance council, in addition to making those specific findings required by 75-3711c mentioned above, must also make a finding that the program proposed will benefit the health or welfare of the people of the state. Although at first glance this guideline would seem rather vague and ambiguous, nevertheless it does require the members of the finance council to direct their attention to the importance of the proposed program and requires an exercise of their judgment in that regard. It should also be noted that with respect to the receipt and expenditure of federal funds or funds from other sources, the finance council may not give any vested commitment that a future legislative enactment will provide any additional state funds to the purpose of the proposed program. This is certainly an additional limitation on the power of the council in this area. (75-3711a [c] and [d].)

As pointed out above the district court considered these guidelines and held them to be inadequate as legislative standards to govern the finance council in the exercise of the legislative powers referred to above. Since the sufficiency of the guidelines is one of the primary issues to be determined on this appeal, it would be helpful to see what this court has said in the past in regard to legislative standards and guidelines. In *Schneider I* we

stated that great leeway should be allowed the legislature in setting forth guidelines or standards and the use of general rather than minute standards is permissible. In *Board of Satanta v. Grant County Planning Board,* 195 Kan. 640, 408 P. 2d 655, it is stated that what constitutes adequate standards will of necessity depend upon the nature of the power delegated in each particular case and the constitutional grants or prohibition pertaining thereto. In *State, ex rel., v. Hines,* 163 Kan. 300, 309, 182 P. 2d 865, there is a helpful discussion of what standards should be required to sustain a delegation of legislative power. In that case a standard is defined as a definite plan or pattern into which the essential facts must be found to fit before specified action is authorized. We noted that standards are difficult to define because of the variable nature thereof but stated that the test of the sufficiency of standards is whether they are sufficiently definite and certain to enable one reading them to know his rights, obligations, and limitations thereunder. Stated in another way, the power given an administrative tribunal must be "canalized" so that the exercise of the delegated power must be restrained by banks in a definitely defined channel. Professor Davis in his Administrative Law Treatise, Section 2.15, suggests that, in considering a delegation of legislative powers to an administrative agency, courts should be less concerned with standards than with *safeguards* to provide protection against arbitrary action, unfairness, or favoritism.

Under all of the circumstances in this case we have concluded that the delegation of the specified legislative functions is constitutionally sufficient. The obvious purpose and practical consequences of delegating these legislative powers to the state finance council were to enable the Kansas state government to function without the necessity of the state legislature remaining permanently in session throughout the year. In our judgment the legislative standards and guidelines which are discussed above effectively "canalize" the exercise of the delegated powers in a definitely defined channel, so that the members of the finance council should know their rights, obligations, and limitations in the exercise of those powers. The state finance council has not been given the power to authorize the expenditures of money limited only by the caprice and desire of its members. The standards which have been provided by the legislature in our

judgment limit the power of the finance council to act only in the event of unforeseeable circumstances, where there is some necessity for prompt action, and only within the general area of previously authorized functions of the various state agencies. We must assume that the state finance council will exercise its powers within the legislative guidelines in a fair and conscientious manner. Of course, if it fails to do so and the limitations of its powers established by the legislature are violated, then the courts are available to restrain any abuse of its powers. Under all the facts and circumstances we have concluded that the delegation of the legislative powers to the state finance council in this case is accompanied by adequate standards to guide the finance council in the exercise of such powers with sufficient safeguards to restrain the finance council from arbitrary and illegal action. In ruling to the contrary the district court was in error.

The second basic issue to be determined on the appeal involves the power of the state finance council to authorize the transfer of funds between items of appropriation from the Kansas educational building fund. The district court held this power to be exclusively an executive power and hence the exercise of such power by the legislative members of the finance council would constitute an unconstitutional usurpation of executive power by the legislative branch in violation of the separation of powers doctrine. This issue arose as a result of an amendment to an appropriation bill. House bill 3059, which now appears as Chapter 33, Laws of 1976, authorized Kansas State College of Pittsburg, University of Kansas Medical Center, Wichita State University, University of Kansas, and Emporia Kansas State College to initiate and complete certain specified capital improvement projects on each campus. In each instance a specified amount was appropriated from the educational building fund to the particular college or university. Additional moneys were also appropriated from certain special revenue funds. These appropriations are contained in sections 2 through 6 of chapter 33. This appropriation bill was amended later in the session by Senate Bill 1034 which now appears in Chapter 24, Laws of 1976. The particular section granting powers to the state finance council is section 76 (*b*) of chapter 24 which provides as follows:

"(*b*) With regard to Kansas educational building fund appropriations made in sections 2 through 6, inclusive, of 1976 House bill No. 3059 to institutions under

the state board of regents, amounts from one item of appropriation from the Kansas educational building fund for a project of any such institution under the state board of regents may be transferred to another item of appropriation for a project at the same institution or for a project at any other institution under the state board of regents upon written application by the state board of regents and approval by the state finance council acting on this matter, which is hereby characterized as a matter of legislative delegation and subject to the guidelines prescribed in subsection (c) of section 2 of 1976 House bill No. 3261, except paragraph (3) of said subsection (c), and in addition upon a finding by the state finance council that the transfer requested will permit the completion of the project from which amounts are transferred without substantially changing the scope of that project and will permit or aid in the completion of the project to which the transfer is made without substantially changing the scope of that project."

It should be noted that in authorizing such a transfer of funds, the state finance council must follow the general guidelines contained in K. S. A. 1976 Supp. 75-3711c discussed above with an additional finding required that the transfer requested will permit the completion of the project from which funds are transferred without substantially changing the scope of that project and will permit or aid in the completion of the project to which the transfer is made without substantially changing the scope of that project.

The issue to be determined is whether the exercise of this power to transfer items of appropriation from the Kansas educational building fund constitutes a usurpation of powers in violation of the separation of powers doctrine. In *Schneider I* one of the issues to be determined was the nature of the power of a state agency to transfer funds from one item of an appropriation to another item of that agency's appropriation. The specific power under consideration in *Schneider I* was granted to the state finance council by K. S. A. 1975 Supp. 75-3726a. We held that this power was essentially executive or administrative in nature since it concerned the day-to-day operations of the department of administration and its various divisions. We declared that the vesting of such power in the state finance council granted to a legislatively orientated body control over the operation of an executive agency and constituted a usurpation of executive power by the legislative department in violation of the separation of powers doctrine.

The specific power vested in the state finance council to transfer items of appropriation from the Kansas educational

building fund was not involved in *Schneider I.* We have concluded that because of unusual circumstances involving the nature of the Kansas educational building fund the power to make line item transfers from such fund as vested in the state finance council does not constitute a violation of the separation of powers doctrine. In *Schneider I* we emphasized that a usurpation of powers exists only where there is significant interference by one department with operations of another department. The Kansas educational building fund was established by the legislature under the specific authority of Article 6, Section 6 *(a)*, of the Kansas Constitution which provides as follows:

"Sec. 6. **Finance.** (*a*) The legislature may levy a permanent tax for the use and benefit of state institutions of higher education and apportion among and appropriate the same to the several institutions, which levy, apportionment and appropriation shall continue until changed by statute. Further appropriation and other provision for finance of institutions of higher education may be made by the legislature."

This constitutional provision has been implemented by statutory provisions providing for an annual permanent state tax on all tangible property in the state for the use and benefit of state institutions of higher education and for the depositing of all money received from that tax in the Kansas educational building fund. These statutory provisions may be found at K. S. A. 1976 Supp. 76-6b01, 76-6b02, and 76-6b03. Pursuant to these statutes and the constitutional provision mentioned above, at each session the legislature appropriates money from this special fund to various institutions of higher education as required for the construction, reconstruction, equipment, and repair of buildings and grounds at these various institutions. The apportionment of these funds is a matter of particular legislative concern. Each of the educational institutions is, of course, seeking as large an appropriation for its building program as it can obtain, and the appropriation of the funds to the educational institutions is exclusively a legislative decision.

This particular matter of concern to the legislature is one which undoubtedly could be left to each legislative session. However, as in the case of other matters, unforeseeable circumstances may arise where prompt action is required to avoid delay in the construction projects previously authorized by the legislature. So long as adequate legislative standards or guidelines are provided

by the legislature, we see no constitutional impediment to per-mitting the legislature to delegate certain powers in this regard to the state finance council. In our judgment the statutory guide-lines provided to govern the action of the state finance council in this area are sufficiently definite and certain to satisfy the con-stitutional requirements.

We grant that the transfer of line items of appropriation to a single state agency ordinarily involves the exercise of executive power. However, in a matter of such great legislative concern, the exercise of the power to transfer items of appropriation by both the governor and the legislative members of the state finance council does not in our judgment constitute a usurpation of powers in violation of the separation of powers doctrine. We think it significant that appropriations from the Kansas educa-tional building fund are made directly to a *particular educational institution* designated in the appropriation act. The practical effect of transferring items of appropriation from one educational institution to another is that authorized expenditures for one institution are thereby decreased while authorized expenditures by another institution are, in effect, increased. In our judgment the district court erred in ousting the legislative members of the state finance council from exercising the power to transfer items of appropriation from the Kansas educational building fund.

For the reasons set forth above the judgment of the district court is reversed. Judgment is for the defendants as heretofore entered by this court on March 14, 1977.