The Honorable Herman Dillon State Representative, Thirty-Second District State Capitol, Room 273-W Topeka, Kansas 66612
Dear Representative Dillon:
You request our opinion regarding the constitutionality of the 1996 statutes creating the Consolidation Study Commission of Kansas City, Kansas, and Wyandotte County, and empowering the Commission to formulate a plan for consolidation. Your specific questions are as follows:
"1. Who has the authority to legislate?
 "2. Who has the power to create, modify, or dissolve local governmental entities?
 "3. Who has the power to govern or enact legislation that governs the cities and counties of the State of Kansas when said laws are applicable uniformly across the state?
 "4. Can the legislature which is composed of the House of Representatives and the Senate as set out in our constitution, delegate their legislative authority to appointed boards or committees for the purpose of creating law that is binding on any or all citizens of the State of Kansas?"
With regard to your first question, the Kansas Constitution generally vests the legislative power of this State in the House of Representatives and the Senate. Kan. Const., Art. 2, § 1. However, the Constitution specifically authorizes the Legislature to confer powers of local legislation upon political subdivisions of the state, Art. 2, § 21, and legislative powers relating to interstate functions upon certain interstate bodies, Art. 2, § 30. Further, Article 12, Section 5 of the Kansas Constitution empowers cities to determine their local affairs and government with certain limitations. [The Constitution vests legislative authority in other entities as well. See, e.g., Kan. Const., Art. 1, §6; Van Sickle v. Shanahan, 212 Kan. 425, 450 (1973)].
As to your second question, generally it is the Legislature that has the power to create, modify and dissolve local governmental entities. Kan. Const., Art. 9, § 1; Art. 12, § 5; Gratney v. Wyandotte County,111 Kan. 160, 167 (1922) (Legislature has the power to abolish counties and county organizations); In re Hinkle, 31 Kan. 712, 714 (1884) (Legislature has the power to abolish townships).
The answer to your third question is clear from the provisions of Article 2, Section 1 and Article 12, Section 5 of the Constitution; it is the Legislature that has the power to enact legislation applicable uniformly to all cities.
Your fourth question concerns the Legislature's authority to delegate its powers.
 "If the powers sought to be delegated are legislative in character, as distinguished from administrative, ordinarily they cannot be delegated unless their delegation is authorized by some express provision of the constitution or the authorization arises by reason of clear implication therefrom. Such a result follows from the doctrine of separation of the powers of government. The functions of the legislature must be exercised by it alone and cannot be delegated unless there is constitutional sanction therefor." State, ex rel. Donaldson v. Hines, 163 Kan. 300, 303 (1947). See also, State, ex rel. Tomasic v. Kansas City, Kansas Port Authority, 230 Kan. 404, 414 (1981).
Clearly the Legislature may delegate legislative powers to other entities pursuant to Article 2, Section 21 and Article 12, Section 5 as discussed previously.See Shawnee Hills Mobile Homes, Inc. V. Rural WaterDistrict, 217 Kan. 421, 435 (1975); State, ex rel.Perkins v. Hardwick, 144 Kan. 3, 6 (1936). Also relevant to your inquiry is Article 2, Section 17 which contains the following proviso:
 "The legislature may designate areas in counties that have become urban in character as `urban areas' and enact special laws giving to any one or more of such counties or urban areas such powers of local government and consolidation of local government as the legislature may deem proper."
Clearly our Constitution envisions delegation of legislative authority to local entities to deal with matters of local concern. See Cogswell v. ShermanCounty, 238 Kan. 438, 442 (1985) (delegation of certain powers to political subdivisions of government recognizes that governmental subdivisions are usually better judges of their immediate and local needs than the legislature); State, ex rel. Hawks v. City of Topeka,176 Kan. 240, 246 (1954).
It is also generally recognized that the Legislature is free to delegate such of its powers as are not purely legislative in nature. "Thus, the rule is that in order that a court may be justified in holding a statute unconstitutional as a delegation of legislative power, it must appear that the power involved is purely legislative in nature . . . ." 16 Am.Jur.2dConstitutional Law § 337 (West 1979).
 "Purely legislative power, which can never be delegated [except as constitutionally authorized], has been described as the authority to make a complete law — complete as to the time when it shall take effect and as to whom it shall be applicable — and to determine the expediency of its enactment. . . . The case law recognizes that there is a proper delegation of power where the legislature has laid down a complete and definite declaration of policy and established objective standards or guidelines, describing the subject matter or the field wherein the legislation shall apply. And only in the event of a total abdication of that power, through failure either to render basic policy decisions or to assure that they are implemented as made, will the judiciary intrude on legislative enactments for being an unlawful delegation, and then only to preserve the representative character of the process of reaching legislative decision." 16 Am.Jur.2d Constitutional Law at §§ 337, 339.
The Kansas Supreme Court has adopted this analysis:
 "We think it clear that while the legislature cannot delegate its constitutional power to make a law, it can make a law which delegates the power to determine some fact or state of things upon which such law shall become operative. In other words, the legislature may enact general provisions but leave to those who are to act certain discretion in `filling in the details,' so to speak, provided, of course, it fixes reasonable and definite standards which govern the exercise of such authority." State, ex rel. Fatzer v. Urban Renewal Agency of Kansas City, 179 Kan. 435, 440 (1956).
See also State, ex rel. Anderson v. Fadely, 180 Kan. 652,663-664 (1957); Board of Satanta v. Grant CountyPlanning Board, 195 Kan. 640, 646 (1965); State, exrel. Schneider v. Bennett, 222 Kan. 12, 18-19 (1977);Kaufman v. Kansas Dept. of SRS, 248 Kan. 951, 956
(1991). What constitutes adequate standards to govern the exercise of the authority granted will depend upon the nature of the power delegated. Board of Satanta,supra. "Ordinarily, the test is whether the provisions of the statute purporting to impose the duty of administration upon an officer or board are sufficiently definite and certain to enable one to know his rights, obligations and limitations thereunder." Fadely,180 Kan. at 664. See also State, ex rel. Donaldson v.Hines, 163 Kan. 300, 308-309 (1947). In State, ex rel.Schneider v. Bennett, 219 Kan. 285 (1976) (Schneider I), the Kansas Supreme Court struck down as an unlawful delegation of legislative authority a statute empowering the State Finance Council to act with regard to certain appropriations when the Legislature was not in session, enabling authorization of expenditures in excess of fixed statutory limitations. The Court found that the only standard provided by the statutory grant of power was "where such excesses are the result of circumstances which could not reasonably have been foreseen when the legislature was in session." The statute was found deficient not because it allowed an administrative agency to take action contrary to statutory law, but rather because there was no standard which limited the Finance Council as to the amount or the subject matter of the expenditures which it might authorize. The very issue came before the Court again in State, ex rel.Schneider v. Bennett, 222 Kan. 12 (1977) (Schneider II), but the Court there determined that the delegation was proper because there were adequate standards to guide the Finance Council in its implementation, and to "know their rights, obligations, and limitations in the exercise of those powers." 222 Kan. at 21. The Court noted that "great leeway should be allowed the legislature in setting forth guidelines or standards and the use of general rather than minute standards is permissible." Id.
Pursuant to K.S.A. 1996 Supp. 12-342 the Legislature created the Consolidation Study Commission of Kansas City, Kansas, and Wyandotte County, determined that the Commission members would be appointed by the Governor (in the event there was no presidential primary in 1996), and generally established the form and procedure of the Commission. Pursuant to K.S.A. 1996 Supp. 12-343
the Legislature assigned certain tasks to the Commission, directed how these tasks were to be performed and set forth a procedure whereby any plan adopted by the Commission would be submitted to the electorate of Wyandotte County for approval or rejection. K.S.A. 1996 Supp. 12-343 limits the Commission to addressing the issue of "consolidation of the city and county or certain city and county offices, functions, services and operations," and prescribes the studies and hearings to be conducted by the Commission to enable it to properly address this issue. K.S.A. 1996 Supp. 12-344 requires the plan to include provisions to govern certain issues such as which officers are to be appointed and which elected, and fixing the boundaries of the election districts. K.S.A. 1996 Supp. 12-345 sets forth provisions that are to become effective if the Commission recommends and the electorate adopts a plan for the consolidation of the city and county: Wyandotte County would be designated an urban area for purposes of exercising urban area powers of local government and consolidation; the consolidated city-county would be subject to the cash-basis and budget laws; debt limitations would be set by statute; other political subdivisions in the County would be protected from effects of the consolidation; etc. Finally, K.S.A. 1996 Supp. 12-346 prohibits annexation by any consolidated city-county of land located outside the county, and limits the city-county's ability to annex land within the boundaries of the county.
In our opinion, these statutes establish sufficient standards and guidelines to permit delegation of the authorities granted. Mindful of the rule that legislation is to be presumed valid and not declared unconstitutional unless infringement of the law is clear beyond substantial doubt [Wulf v. Kansas City, 77 Kan. 358,367 (1908)], and of the Constitution's recognition of local control over local matters, we conclude that K.S.A. 1996 Supp. 12-340 et seq. do not constitute an unlawful delegation of legislative authority.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm