No. 46,672

KANSAS STATE BOARD OF HEALING ARTS, *Appellee,* v. JAMES E. SEASHOLTZ, *Appellant.* KANSAS STATE BOARD OF HEALING ARTS, *Appellee,* v. IRA JOHN SEASHOLTZ, *Appellant.*

(504 P. 2d 576)

Opinion filed December 9, 1972.

*John B. Towner,* of Pittsburg, argued the cause, and *J. R. Hall, Jr.,* of Miami, Oklahoma, was with him on the brief for the appellants.

*John Anderson, Jr.,* of the firm of Hackler, Anderson, Londerholm, Speer and Vader, of Overland Park, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This appeal stems from a judgment of the district court of Cherokee County sustaining an order of the Kansas State Board of Healing Arts, herein called the board, revoking the licenses of James E. Seasholtz and Ira John Seasholtz to practice the healing arts in the State of Kansas. In this opinion we shall refer to the Messrs. Seasholtz either by name or as respondents.

Both respondents are shown to have been licensed doctors of osteopathy having offices in Galena, Kansas where they participated in the social welfare program of this state as providers of services to medical assistance recipients.

Apparently as a result of complaints which reached official ears, the attorney for the board filed a petition against each of the respondents seeking to revoke their respective licenses to practice osteopathy, medicine and surgery in this state. The petitions were consolidated for hearing before the board and the actions have remained consolidated throughout the appellate process.

The charges lodged against the Doctors Seasholtz fall under two classes: (1) The presentation of false and fraudulent claims and charges against public funds for medical services furnished to welfare patients, and (2) the solicitation of medical assistance business from welfare patients.

After an extended series of hearings, the board found generally against the respondents on the charges set forth in the petition and revoked their respective licenses. However, some two months before concluding the hearings and entering the orders of revocation, the board suspended the respondents' licenses to practice under circumstances which will shortly be detailed.

K. S. A. (now K. S. A. 1972 Supp.) 65-2836, which was in effect at all times pertinent herein, provides that a license to engage in the practice of the healing arts may be revoked or suspended for any one of eleven enumerated acts or offenses including "immoral, unprofessional or dishonorable conduct." The transgressions charged against the respondents are alleged to come within this category.

Two contentions are listed in the statement of points. Turning to the first point, it is said the board had no authority to revoke the respondents' licenses after it had previously issued an order suspending them. This claim finds its origin in an action taken by the board on July 26, 1969, when the respondents, during an extended series of hearings, failed for a second time to show up in person for a scheduled session. On this occasion the board adopted a motion to suspend their licenses for a year and to continue the hearing for revocation until a date to be fixed by the board. The record reflects that members of the board believed they should have the benefit of the doctors' personal testimony before finally determining the issue of revocation. A final hearing was eventually held on September 27, at which both respondents appeared to testify and

it was only after this hearing that the orders of revocation were entered.

Was the Board of Healing Arts precluded from revoking the respondents' licenses because of its previous action in suspending them? We believe not. It seems clear to us that the suspension order was entered, not as the ultimate judgment of the board, but as a purely interim measure. At a hearing scheduled for July 10, 1969, at which neither the respondents nor their counsel had made an appearance, a discussion ensued between board members from which it appears that the respondents had not renewed their Kansas licenses as required by K. S. A. 1971 Supp. 65-2809 but had simply kept on practicing. At that time a motion was presented, although it was not acted upon, to obtain a restraining order to prohibit the respondents from practicing *until the hearing was completed by the board.*

The respondents argue that while the board is empowered by K. S. A. 65-2838 to revoke *or* suspend a license for any ground listed in 65-2836, it is not authorized to do both. This might be true so far as the board's ultimate judgment is concerned, since it would appear somewhat incongruous for suspension and revocation to be decreed simultaneously as a penalty. The revocation, in such event, would simply engulf the suspension.

But under the circumstances shown here the suspension had a separate and distinct role to play. The revocation hearing had not been concluded when the suspension was ordered; the case was not then ripe for any final judgment and the suspension took up the slack.

Although several hearings had already been held, the proceedings had been plagued by delay, occasioned in large part by the respondents. More than five months had elapsed since the action was filed, and respondents were still engaged in the active practice of their profession—despite their failure to obtain the required annual renewal of their licenses. Two additional months were to transpire before the final hearing would be held and the respondents would give their testimony.

In this state of affairs we believe the board acted reasonably and with justification in suspending the licenses until the revocation proceedings could culminate in a final hearing and a final determination could be reached. The suspension order, although couched in terms of one year, was tied in with a continuance of the main pro-

ceedings and obviously was intended to prevent the respondents from practicing until those proceedings could be terminated. In *Anonymous v. Superior Court In And For Co. of Pima,* 10 Ariz. App. 243, 247, 457 P. 2d 956, the court said that "the term 'suspend,' given its ordinary meaning, means nothing more than a temporary cessation, *i. e.,* a holding in abeyance."

Such, we believe, was the intended purpose of the suspension order issued here.

As this court said in *Kansas State Board of Healing Arts v. Foote,* 200 Kan. 447, 453, 436 P. 2d 828, 28 A. L. R. 3d 472, the healing arts act is designed to protect members of the public against the unprofessional, the improper and the unqualified practice of the healing arts. Kansas has sought to attain this objective by requiring potential practitioners to be licensed, in the first instance, and by suspending or revoking the licenses of those who are later found to be incompetent or engaging in dishonorable, shady or unprofessional conduct. The purpose both of granting and of suspending or revoking a license is to eliminate the unscrupulous or incompetent doctor from practice of the healing arts. In suspending the respondents' licenses to practice we believe the board acted in furtherance of the purposes sought to be achieved by the healing arts act, and that its action in this respect cannot be said to have transcended its authority.

The second ground set forth in respondents' statement of points is fashioned in these words:

"That knowingly and intentionally making excessive and unwarranted charges upon public funds under claims as medical providers does not constitute grounds for revocation of appellants' licenses to practice Osteopathy, medicine and surgery."

We view this contention as untenable. Among the grounds for revocation contained in K. S. A. 65-2836 is that of "immoral, unprofessional or dishonorable conduct." The petition filed against the Doctors Seasholtz alleged they had been guilty of "unethical, dishonorable and unprofessional conduct." Although the petition uses the adjective "unethical" rather than "immoral", which is used in the statute, we see little substantial difference between the two terms so far as the present case is concerned. The words "moral" and "ethical" are shown as synonyms for each other in Webster's Third New International Dictionary, Unabridged. The terms "immoral" and "unethical" both import a lack of probity and may be

used interchangeably in the context of the charges made here. "Dishonorable" conduct is likewise conduct which is dishonest, unprincipled and shameful.

Overall, we have no hesitancy in holding that the intentional making of excessive and unwarranted charges for medical services by a licensed practitioner of the healing arts is indeed reason for the revocation of his license, whether the charges are presented to a public agency or to a patient. Numerous cases may be found to the effect that where a doctor has been guilty of making false medical claims, reports or billings, his conduct justifies revocation of his license to practice his profession. (See 95 A. L. R. 2d Anno: Doctor—False Claim, Report or Bill, pp. 873, *et seq.*)

The respondents are also charged with soliciting medical assistance business from welfare patients and their attendants. The solicitation of professional patronage is one of the fifteen types of unprofessional conduct listed in K. S. A. 65-2837. Thus another ground for revocation must be said to have been established, since no point is made concerning the sufficiency of the evidence.

The respondents have devoted a portion of their brief to constitutional questions, none of which appear to have been raised in the trial court. This court has been consistent in holding that issues which have not been presented to the trial court will not be considered by us on appeal. (*Shinkle v. State Highway Commission,* 202 Kan. 311, 448 P. 2d 12; *Pacific Indemnity Co. v. Berge,* 205 Kan. 755, 473 P. 2d 48.) Furthermore, no constitutional question is included in the respondents' statement of points. For this reason, also, the constitutional issue is not subject to appellate review. (Supreme Court Rule No. 6 [*d*], 205 Kan. xxix.) It is the rule in this jurisdiction that no issue, other than one going to jurisdiction, will be considered on appeal unless it has been included in the statement of points. (*Shinkle v. State Highway Commission,* supra; *Erdman v. Sowle,* 207 Kan. 488, 492, 485 P. 2d 1392.)

We find no error in the judgment of the court below and the same is affirmed.