No. 65,552

JOHN L. VAKAS, *Appellant,* v. THE KANSAS BOARD OF HEALING ARTS, *Appellee.*

(808 P.2d 1355)

Opinion filed April 12, 1991.

*Larry Wall,* of law offices of Larry Wall, of Wichita, and *Joseph Seiwert,* of the same firm, argued the cause and were on the brief for appellant.

*Steve A. Schwarm,* litigation counsel for the Kansas Board of Healing Arts, argued the cause, and *Lawrence T. Buening, Jr.,* general counsel, and *Michelle T. Torres,* disciplinary counsel, of the same agency, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The Kansas Board of Healing Arts (Board) revoked appellant John L. Vakas' license to practice medicine and surgery. He applied for reinstatement. When reinstatement was denied, appellant asked for reconsideration, which was also denied. Appellant then filed a petition for judicial review; the district court upheld the Board's action, and this appeal followed.

Appellant was originally granted a license to practice medicine by the Board on January 15, 1966. On October 11, 1985, the Board issued an order of emergency limitation of license, prohibiting appellant from selling, dispensing, administering, and prescribing controlled substances designated or controlled by the Uniform Controlled Substances Act, K.S.A. 65-4101 *et seq.* A presiding officer, designated pursuant to the Administrative Procedure Act, K.S.A. 77-501 *et seq.,* issued an initial order on January 4, 1988, which recommended that the appellant be suspended from the practice of medicine for a period of five years beginning October 11, 1985, and that, following suspension, he not be allowed to prescribe controlled substances.

On February 6, 1988, the Board conducted a hearing to reconsider the initial order. In its final order, which was filed May 6, 1988, the Board accepted many of the findings of fact and conclusions of law from the initial order. Due to the seriousness of appellant's professional incompetence and unprofessional conduct, however, his license to practice medicine and surgery was revoked. Revocation rather than suspension of appellant's license enabled him to apply for reinstatement after one year. K.S.A. 1990 Supp. 65-2844. On August 25, 1989, appellant filed an application for reinstatement of his license. A hearing was held on October 14, 1989, where the Board determined that appellant's license to practice medicine should not be reinstated. A final order setting forth the findings of fact and conclusions of law which formed the basis for the Board's action was served on appellant on November 20, 1989. Appellant's petition for reconsideration was denied.

On January 16, 1990, appellant filed a petition for judicial review pursuant to K.S.A. 77-621(c), asserting the following three grounds: (1) The Board denied appellant's motion in order to punish him and did not evaluate his application impartially; (2) the Board's findings of fact were not supported by substantial evidence when viewed in light of the record as a whole; and (3) the Board's action was unreasonable, arbitrary, and capricious because it did not give due weight to appellant's attempts at rehabilitation. Appellant challenged the constitutionality of the statute for the first time in his trial brief submitted on April 10, 1990. In a memorandum decision filed June 1, 1990, the court denied the petition for judicial review and entered judgment on behalf of the Board and against appellant.

The appellant first argues that the legislature violated Article 2, § 1 of the Kansas Constitution in delegating power to determine whether a medical license should be reinstated without setting forth the appropriate guidance. Article 2, § 1 of the Kansas Constitution provides: "The legislative power of this state shall be vested in a house of representatives and senate." The question we must decide is whether this provision of the constitution is violated by K.S.A. 1990 Supp. 65-2844, which provides:

"**Reinstatement of license; application; rules and regulations.** At any time after the expiration of one year, application may be made for reinstatement

of any licensee whose license shall have been revoked, and such application shall be addressed to the board. The board may adopt such rules and regulations concerning notice and hearing of such application as considered necessary."

The Healing Arts Act, which is found at K.S.A. 65-2801 *et seq.*, provides a comprehensive scheme to regulate those involved in the practice of the healing arts. The purpose of the Act is stated as follows:

"Recognizing that the practice of the healing arts is a privilege granted by legislative authority and is not a natural right of individuals, it is deemed necessary as a matter of policy in the interests of public health, safety and welfare, to provide laws and provisions covering the granting of that privilege and its subsequent use, control and regulation to the end that the public shall be properly protected against unprofessional, improper, unauthorized and unqualified practice of the healing arts and from unprofessional conduct by persons licensed to practice under this act." K.S.A. 65-2801.

The Board administers the provisions of the Healing Arts Act. K.S.A. 1990 Supp. 65-2812. Qualifications of the 15-member Board are specified by statute to include five doctors of medicine, three doctors of osteopathy, three doctors of chiropractic, one podiatrist, and three representatives of the general public. K.S.A. 1990 Supp. 65-2813.

The Healing Arts Act sets out the application and examination procedures for those who wish to be licensed in the healing arts. K.S.A. 65-2824 to -2833. The Act also lists 30 grounds that may be the basis for which a licensee's license may be revoked, suspended, or limited, or for which a licensee may be publicly or privately censured. K.S.A. 1990 Supp. 65-2836. Here, appellant's license was revoked on grounds that he "has committed an act of unprofessional or dishonorable conduct or professional incompetency." K.S.A. 1990 Supp. 65-2836(b). The term "professional incompetency" is defined as follows:

"(1) One or more instances involving failure to adhere to the applicable standard of care to a degree which constitutes gross negligence, as determined by the board.

"(2) Repeated instances involving failure to adhere to the applicable standard of care to a degree which constitutes ordinary negligence, as determined by the board.

"(3) A pattern of practice or other behavior which demonstrates a manifest incapacity or incompetence to practice medicine." K.S.A. 1990 Supp. 65-2837(a).

The definition of "unprofessional conduct" lists 28 different acts, but the 2 relevant to this case are found at K.S.A. 1990 Supp. 65-2837(b):

"(11) Prescribing, ordering, dispensing, administering, selling, supplying or giving any amphetamines or sympathomimetic amines, except as authorized by K.S.A. 65-2837a and amendments thereto.

. . . .

"(23) Prescribing, dispensing, administering, distributing a prescription drug or substance, including a controlled substance, in an excessive, improper or inappropriate manner or quantity or not in the course of the licensee's professional practice."

The grounds for the revocation of appellant's license are set forth in the final order, filed May 6, 1988, and can be summarized as follows: administering or prescribing controlled substances in antagonistic, irrational, or illogical combinations; failing to adequately document medical records to support administering or prescribing controlled substances; failing to monitor or provide follow-up care to patients; providing controlled substances inappropriately for diagnosed conditions, particularly the use of Preludin in treatment of obesity, narcolepsy, and depression; and providing prescription drugs on intermittent or short-term basis for conditions requiring long-term care. Rather than suspend appellant for five years as recommended by the presiding officer, the Board, in its final order revoked appellant's license to practice medicine and surgery "[d]ue to the serious nature of the professional incompetence and unprofessional conduct."

Appellant does not question this revocation or the procedure surrounding it. Instead, appellant challenges the refusal to grant reinstatement of his license. Appellant argues that K.S.A. 1990 Supp. 65-2844 does not provide the Board with guidelines to govern the Board's discretion in determining whether to reinstate a license to practice medicine. According to appellant, the Board's "unfettered discretion as to whether a license should be reinstated" violates Article 2, § 1 of the Kansas Constitution because the legislature failed to provide the Board with reasonable and definite standards regarding reinstatement.

Our review of this case is governed by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601

*et seq.* The scope of review is set out at K.S.A. 77-621, which provides, in pertinent part:

"(a) Except to the extent that this act or another statute provides otherwise:
"(1) The burden of proving the invalidity of agency action is on the party asserting invalidity; and
"(2) the validity of agency action shall be determined in accordance with the standards of judicial review provided in this section, as applied to the agency action at the time it was taken.

. . . .

"(c) The court shall grant relief only if it determines any one or more of the following:
"(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or
"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Here, if the action of the Board is constitutionally authorized, it is presumed valid on review unless not supported by substantial competent evidence and is so wide of its mark that it is outside the realm of fair debate, or is otherwise unreasonable, arbitrary, or capricious and prejudicial to the parties. *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. 470, 475, 749 P.2d 21 (1988).

Appellant cites several cases in which this court has considered whether the legislature unlawfully delegated its legislative power to administrative agencies. In *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980), this court found a statute unconstitutional that required an applicant for a license as a pharmacist to be a graduate of a pharmacy school accredited by a private organization. The legislature can enact general provisions to regulate and can grant state agencies discretion to fill in details if the legislature establishes reasonable and definite standards to govern the exercise of this authority. 228 Kan. at 584. The legislative power that is vested in the legislature cannot be delegated to nongovernmental organizations or groups, however. 228 Kan. at 585. Appellant recognizes that, unlike the

private pharmacy agency in *Gumbhir,* the Board here is a state agency.

Appellant relies upon *Wesley Medical Center v. McCain,* 226 Kan. 263, 597 P.2d 1088 (1979), where this court upheld legislation that delegated the fixing of unemployment contribution rates for hospitals to the secretary of human resources. The secretary had only to determine which of the detailed category of employers applied and then apply a formula mandated by the legislature. According to appellant, *McCain* established that the legislature must set the standards, while the agency's rule is limited to making factual determinations. The Board argues that application of a mathematical formula mandated by the legislature to determine the unemployment compensation rate is distinguishable from the balancing that must occur to determine whether a medical license should be reinstated, and, therefore, *McCain* is not helpful in deciding the case before the court. We agree.

The legislature is given great leeway in setting forth guidelines and standards. General rather than minute standards are permitted. What constitutes an adequate standard necessarily depends upon the nature of the power delegated in a particular case, as well as the constitutional grants or prohibitions pertaining thereto. *State ex rel., v. Bennett,* 222 Kan. 12, 21, 564 P.2d 1281 (1977). Standards have been defined as a definite plan or pattern that must fit with essential facts before specified action is authorized. 222 Kan. at 21. Although recognizing the difficulty in defining standards because of their variable nature, this court stated:

"[T]he test of the sufficiency of standards is whether they are sufficiently definite and certain to enable one reading them to know his rights, obligations, and limitations thereunder. Stated in another way, the power given an administrative tribunal must be 'canalized' so that the exercise of the delegated power must be restrained by banks in a definitely defined channel. Professor Davis in his Administrative Law Treatise, Section 2.15, suggests that, in considering a delegation of legislative powers to an administrative agency, courts should be less concerned with standards than with *safeguards* to provide protection against arbitrary action, unfairness, or favoritism." 222 Kan. at 21.

Appellant argues that the rules governing reinstatement of doctors are inadequate because (1) the legislation contains no operative facts that would allow reinstatement, (2) no standards

guide whether the license should be reinstated, and (3) no guide-lines enable either the Board or the licensee to know their rights, obligations, or limitations. Unlike the legislation in *McCain* and *Bennett*, appellant asserts that the provision here allowing rein-statement of the license does not contain any detail or any guid-ance as to when such action is appropriate.

Both parties discuss *Boswell, Inc. d/b/a Broad Acres v. Har-kins*, 230 Kan. 738, 640 P.2d 1208 (1982). At issue in *Boswell* was whether the statute, as well as the regulations adopted by the department of health and environment, regarding licensing of adult care homes constituted an unlawful delegation of legis-lative authority. This court concluded that the law and regulations had to be considered in their entirety. The statute in question fully defined an intermediate care nursing home and clearly stated the purpose of the Act. The statute set out requirements gov-erning issuance of a license, inspections and investigations, re-newability, nontransferability, and display and contents of the license. The Act specifically authorized the department of health and environment as the licensing agency to establish necessary standards, rules, and regulations for the operation and licensing of these facilities. 230 Kan. at 740-41.

In *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968), this court recognized that the stated purpose for enacting the Healing Arts Act is found at K.S.A. 65-2801. The court then noted:

"The objective always in statutory construction is to ascertain and give effect to legislative intent. In so doing, where police power is to be exercised, we must fairly read the entire context of legislation on the subject, rather than only an isolated section, and consider the object of that legislation and the evils or mischief sought to be prevented or remedied. The general purpose of the legislation as shown by the statute as a whole is of primary importance [citation omitted]." 200 Kan. at 452.

At the time of the decision in *Foote*, K.S.A. 65-2836 (Corrick) listed unprofessional conduct as one of the grounds for revocation or suspension of a license to practice the healing arts. Fifteen acts constituting unprofessional conduct were listed in K.S.A. 65-2837 (Corrick), but incompetency was not included. Dr. Foote's license to practice medicine was revoked on the ground of ex-

treme incompetence in the management of his cases. In upholding the action by the board, this court stated:

"The doctrine of *expressio unius* has limited application (see discussion in *Johnson v. General Motors Corporation*, 199 Kan. 720, 722, 433 P.2d 585, 589). Considering the entire policy expressed in the act, we believe the legislature, by enumerating certain acts and classifying them as unprofessional conduct, did not thereby intend to exclude all other acts or conduct in the practice of the healing arts which by common understanding render the holder of a license unfit to practice. It would indeed be difficult, not to say impractical, in carrying out the purpose of the act, for the legislature to list each and every specific act or course of conduct which might constitute such unprofessional conduct of a disqualifying nature. Nor does any such failure leave the statute subject to attack on grounds of vagueness or indefiniteness. Our statute makes no attempt to delineate what acts are included in the terms immoral or dishonorable conduct, which are also made grounds for revocation. The determination whether by common judgment certain conduct is disqualifying is left to the sound discretion of the board." 200 Kan. at 453-54.

This court described the purpose behind enactment of the Healing Arts Act in *Kansas State Board of Healing Arts v. Seasholtz*, 210 Kan. 694, 504 P.2d 576 (1972), as follows:

"[T]he healing arts act is designed to protect members of the public against the unprofessional, the improper and the unqualified practice of the healing arts. Kansas has sought to attain this objective by requiring potential practitioners to be licensed, in the first instance, and by suspending or revoking the licenses of those who are later found to be incompetent or engaging in dishonorable, shady or unprofessional conduct. The purpose both of granting and of suspending or revoking a license is to eliminate the unscrupulous or incompetent doctor from practice of the healing arts." 210 Kan. at 697.

This court interpreted the Certification of Psychologists Act in *Morra v. State Board of Examiners of Psychologists*, 212 Kan. 103, 510 P.2d 614 (1973). Citing *Seasholtz*, we noted that the underlying purpose of licensing acts of this character is "to afford protection to members of the public against unscrupulous, immoral or incompetent practitioners of the healing arts and allied professions." 212 Kan. at 111.

In the recent case of *U.S.D. No. 279 v. Secretary of Kansas Dept. of Human Resources*, 247 Kan. 519, 802 P.2d 516 (1990), this court reaffirmed the principle that legislative intent must be determined from consideration of the entire Act. *U.S.D. No. 279* involved a dispute between the school board and the teachers'

association concerning negotiations for the collective bargaining agreement. The school board contended that the broad grant of power to the Secretary of Human Resources was an unlawful delegation of legislative authority under Article 2, § 1 of the Kansas Constitution. The school board argued that K.S.A. 1990 Supp. 72-5430a failed to provide adequate guidelines to the administrative body. We stated:

"[L]egislative authority may be delegated to an administrative body where guidelines are set forth in the statute which establish the manner and circumstances of the exercise of such power. [Citation omitted.] Where the legislature enacts general provisions for regulation and grants a particular state agency the discretion to fill in the details, we will not strike down the legislation as constitutionally impermissible unless such provisions fail to fix reasonable and definite standards to govern exercise of such authority. [Citation omitted.]" 247 Kan. at 533.

The Professional Negotiations Act, K.S.A. 72-5413 *et seq.*, requires the Secretary to begin impasse resolution procedures and conduct a hearing. The Secretary is granted power to appoint a mediator and factfinder. The Secretary is required to make findings of fact and to dismiss the complaint or enter a final order granting or denying the relief sought. 247 Kan. at 534. This court concluded that these statutory provisions provide substantial guidelines and limitations on the Secretary's authority concerning impasse procedures and prohibited practices. Under K.S.A. 1990 Supp. 72-5430a, the Secretary has the discretion to fill in the details of appropriate relief given the circumstances relating to any of the several prohibited practices. 247 Kan. at 534.

We further concluded that, in the Professional Negotiations Act, the legislature granted the Secretary the authority to exercise a quasi-judicial function rather than a legislative function. In performing this quasi-judicial function, the Secretary investigates, initiates, and conducts hearings on impasse resolution procedures and prohibited practice complaints. Therefore, this court concluded that the delegation of authority to the Secretary did not violate Article 2, § 1 of the Kansas Constitution.

Finally, in *Guardian Title Co. v. Bell*, 248 Kan. 146, 805 P.2d 33 (1991), the district court held that K.S.A. 1990 Supp. 40-2404b(14)(f) and (g) violated the constitutional requirement of separation of powers found in Article 2, § 1 of the Kansas Consti-

tution. Subparagraph (f) sets out prohibitions against the acceptance by a title insurer or agent of title insurance business that would "constitute controlled business" for that insurer or agent. Subparagraph (g) provides that the insurance commissioner shall adopt the necessary regulations to carry out the Act. The insurance commissioner then adopted regulations which included a definition of "controlled business."

The district court found the term "controlled business" to be an unconstitutionally vague term and that the legislature cannot delegate the task of defining an unconstitutionally vague term because to do so violates Article 2, § 1 of the Kansas Constitution. The district court permanently enjoined the insurance commissioner from enforcing subparagraph (f) and any regulation relating thereto.

In reversing the district court, we said:

"We live in an increasingly complex society. To expect the legislature to have the time and expertise to deal with minute details statutorily is not realistic.

"In the case of *In re Sims*, 54 Kan. 1, 11, 37 Pac. 135 (1894), this court said that in its judgment a strict application of the separation of powers doctrine is inappropriate today in a complex state government where administrative agencies exercise many types of power and where legislative, executive, and judicial powers are often blended together in the same administrative agency.

"In the 97 years that have passed since *In re Sims*, this court has consistently stated that an absolute separation of powers is neither practical nor possible. *State, ex rel. Schneider, v. Bennett*, 219 Kan. 285, 288, 547 P.2d 786 (1976); see *State, ex rel., Taylor v. Railway Co.*, 76 Kan. 467, 474, 92 Pac. 606 (1907), *aff'd* 216 U.S. 262, 54 L. Ed. 472, 30 S. Ct. 330 (1910).

"What is required is that a statute express the law in general terms and delegate the power to apply it to an executive agency under standards provided by the legislature. *Wesley Medical Center v. McCain*, 226 Kan. 263, 270, 597 P.2d 1088 (1979). This has been the fundamental rule since early statehood. See *Coleman v. Newby*, 7 Kan. 82, 89 (1871).

"Where flexibility in fashioning administrative regulations to carry out statutory purpose is desirable in light of complexities in the area sought to be regulated, the legislature may enact statutes in a broad outline and authorize the administrative agency to fill in the details." 248 Kan. at 153-54.

We noted that the standards may be implied from the statutory purpose. We found the statutory purpose to be evident since it was set out in the statute. In concluding that subparagraph (f)

provided sufficient standards to guide the commissioner and thus did not violate Article 2, § 1 of the Kansas Constitution, we said: "The modern trend, which we ascribe to, is to require less detailed standards and guidance to the administrative agencies in order to facilitate the administration of laws in areas of complex social and economic problems." 248 Kan. at 154.

In support of its decision to deny appellant reinstatement, the Board directs this court's attention to *State v. Russo*, 230 Kan. 5, 630 P.2d 711 (1981), regarding reinstatement of a disbarred attorney. We agree with the Board that the exercise of discretion by this court in determining whether to grant reinstatement to an attorney is analogous to the exercise of the Board's discretion in determining whether appellant's license to practice medicine and surgery should be reinstated. In *Russo*, this court noted "that each petition for reinstatement must be considered on its own merits and that such decisions must be made on a case by case basis depending upon the facts involved." 230 Kan. at 12. The court set out eight factors to be considered in determining whether to grant reinstatement. The factors include: (1) the present moral fitness of the petitioner, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of petitioner's rehabilitation, (4) the seriousness of the original misconduct, (5) conduct subsequent to discipline, (6) the time which has elapsed since the original discipline, (7) the petitioner's character, maturity, and experience at the time of disbarment, and (8) the petitioner's present competence in legal skills. 230 Kan. at 9. These eight factors are just as relevant in determining if a license to practice medicine and surgery should be reinstated. In *Russo*, we also said:

"It is the duty of the Supreme Court to preserve the high ethical and moral standards required before a person is entitled to enjoy the privilege to practice law. When one first petitions for admission to the bar, he must meet the qualifications required of a member of the profession. When a former attorney seeks reinstatement, he must meet an even greater burden than when he was originally admitted and must overcome the prior adverse conclusions of the court as to his fitness to practice law. *Matter of Keenan*, 313 Mass. 186, 221, 47 N.E.2d 12 (1943); *State, ex rel. Sorensen v. Goldman*, 182 Neb. 126, 153 N.W.2d 451 (1967)." 230 Kan. at 9.

Here, the Board has the same duty as it relates to appellant's privilege to practice medicine, and the appellant has the same burden as to his fitness to again practice medicine. The factors considered by the Board include knowledge that appellant's license was revoked on May 6, 1988, just 15 months before appellant sought reinstatement. The Board also knew revocation was based on 5 instances of unprofessional conduct against separate patients, and 26 instances of unprofessional conduct against 12 patients. The Board argues that the knowledge of these incidents, appellant's age, the length of time appellant practiced before revocation, his conduct subsequent to discipline, the extent of appellant's rehabilitation, and his present competence and professional skills were all factors to be balanced by the Board in determining whether to reinstate appellant.

K.S.A. 1990 Supp. 65-2844, when viewed alone, does not provide notice of what conduct will allow or prevent reinstatement. But if this statute is viewed in light of its stated purpose together with the other provisions of the Healing Arts Act, the necessary requirements to receive a license to practice the healing arts become evident, particularly when K.S.A. 1990 Supp. 65-2836 and 65-2837 are considered.

When the constitutionality of a statute is attacked, this court must resolve all doubts in favor of its validity and, if possible, uphold the statute under attack if a reasonable way exists to construe it as constitutionally valid. *Federal Land Bank of Wichita v. Bott*, 240 Kan. 624, 628-29, 732 P.2d 710 (1987); *State, ex rel., v. Fadely*, 180 Kan. 652, 658-59, 308 P.2d 537 (1957).

Pursuant to K.S.A. 65-2805, the Board "may refuse to grant a license to any person, otherwise qualified, upon any of the grounds for which a license may be revoked under the provisions hereafter contained." The provisions regarding grounds for revocation are set out and defined in K.S.A. 1990 Supp. 65-2836 and 65-2837. Appellant's license was revoked for grounds set forth in these statutes. In determining whether to reinstate appellant, the Board must consider those factors that would prevent appellant from being licensed.

In *Foote*, 200 Kan. at 453, this court outlined the purpose for enacting the Healing Arts Act:

"The whole purpose and tenor of the healing arts act is the protection of the public against unprofessional, improper, unauthorized and unqualified practice of the healing arts. The goal is to secure to the people the services of competent, trustworthy practitioners. The act seeks to do this through licensure. The licensing by the state, granted only after minimal standards of proficiency are met, amounts to the state's recognition of the licentiate as a qualified practitioner. The continued holding of the license may be taken by the public as official indication those standards are being maintained. The object of both granting and revoking a license is the same—to exclude the incompetent or unscrupulous from the practice of the healing arts."

The objective in determining whether to reinstate a license is the same objective in deciding whether to grant a license initially—to exclude the incompetent and unscrupulous from the practice of the healing arts. When the Healing Arts Act is read in its entirety, the legislation contains sufficient guidance from the legislature to enable the Board to exercise its discretion in determining whether to reinstate an individual to the practice of medicine and surgery. The legislature did not improperly delegate its power to the Board by failing to set out adequate guidance in the specific statute relating to reinstatement.

Appellant next contends that the Board applied K.S.A. 1990 Supp. 65-2844 in an arbitrary and capricious manner that violated his due process rights under the Fourteenth Amendment to the United States Constitution. First, appellant criticizes the Board for placing the burden upon him to show why his license should be reinstated, arguing that no authority exists for such a conclusion of law. Appellant asserts that this is evidence of the Board's continuing effort to punish him for his past actions rather than considering his efforts at rehabilitation.

In stating the scope of review, K.S.A. 77-621(a)(1) clearly provides that, unless this Act or another statute provides otherwise, the burden of proof in asserting that an agency action is invalid is upon the party asserting invalidity. Therefore, appellant has the burden of proving that the Board erred in denying his reinstatement.

Under the Act for Judicial Review and Civil Enforcement of Agency Actions, the party seeking change of an agency order has the burden of showing the district court that the agency's order

is invalid for one of the reasons set forth at K.S.A. 77-621(c). The two that are applicable to appellant's argument are as follows:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious."

Although appellant speaks only in terms of the Board's acting in an arbitrary and capricious manner, this court has stated that arbitrary, oppressive, or capricious conduct is shown " 'where an order of an administrative tribunal is based upon findings which are not substantially supported by evidence in the record.' " *U.S.D. No. 461 v. Dice*, 228 Kan. 40, 50, 612 P.2d 1203 (1980) (quoting *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 212 Kan. 137, Syl. ¶ 3, 510 P.2d 160 [1973]). Therefore, it is appropriate for this court to consider both reasons in determining whether the appellant has met the burden of showing that the Board acted improperly in denying reinstatement.

In *Kansas Gas & Electric Co. v. Kansas Corporation Comm'n*, 239 Kan. 483, 497, 720 P.2d 1063 (1986), this court held that the Act for Judicial Review and Civil Enforcement of Agency Actions codified established principles of review, which include the rule that an agency's findings are presumed valid on review. In examining whether substantial evidence supports the district court's decision, K.S.A. 77-621(c)(7), the district court may not set aside an agency's order merely because it would have reached a different conclusion if it had been the trier of fact. Instead, the evidence must show that the agency's determination " 'is so wide of the mark as to be outside the realm of fair debate,' " which would mean the agency's action is not supported by substantial competent evidence. *Zinke & Trumbo, Ltd. v. Kansas Corporation Comm'n*, 242 Kan. at 474 (quoting *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 217 Kan. 604, 617, 538 P.2d 702 [1975]). This court has defined "substantial

evidence" as "evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, 172, 630 P.2d 1131 (1981) (citing *Jibben v. Post & Brown Well Service*, 199 Kan. 793, 433 P.2d 467 [1967]).

The district court must evaluate the agency record to determine whether sufficient evidence supports the agency's decision. The appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court, and must disregard any conflicting evidence or other inferences which might be drawn therefrom. *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 244, 736 P.2d 882 (1987). Where the trial court has made findings of fact and conclusions of law, the appellate court must determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. 241 Kan. at 243.

K.S.A. 77-621(c)(8) provides that agency action must be set aside if it "is otherwise unreasonable, arbitrary or capricious." Unreasonable action has been defined as action taken without regard to the benefit or harm to all interested parties. *Zinke & Trumbo*, 242 Kan. at 474-75. In determining whether an agency acted arbitrarily or capriciously, this court is limited to determining whether a particular action should have been taken or is justified, such as the reasonableness of the agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 381, 673 P.2d 1126 (1983). As previously noted, arbitrary or capricious conduct may be shown where an administrative order is not supported by substantial evidence. *Dice*, 228 Kan. at 50.

The Board in its final order stated that an application for a license to practice the healing arts may be denied based upon any ground for which a license may be revoked. Appellant argues that this is true only if an act has been committed after the initial

revocation of his license that would justify revocation. We do not agree.

A similar issue was addressed in *State v. Russo*, 230 Kan. 5. Russo surrendered his certificate and privilege to practice law following his conviction in the United States District Court for the District of Kansas for conspiracy to violate Kansas laws against prostitution and bribery. Five years after voluntarily surrendering his license, during which time he served approximately 17 months at the United States Penitentiary in Leavenworth and paid a $10,000 fine, petitioner Russo sought reinstatement to practice law. Twenty-five witnesses were called at the hearing, and all testimony was favorable to petitioner. The disciplinary administrator presented no evidence in opposition to petitioner's reinstatement.

Although admitting that all evidence was favorable to the petitioner, a majority of the members of this court concluded that the petition for reinstatement should be denied. 230 Kan. at 7. The basis for the court's decision was the conviction that occurred prior to the attorney's surrendering his license. The court explained its decision by emphasizing that conspiracy to bribe a police officer in order to protect and promote other illegal activities is an offense that is totally repugnant to the administration of justice and the duties of an attorney. 230 Kan. at 12. Such an offense strikes at the very heart of the criminal justice system and, if tolerated, could completely destroy our system of justice. Each petition for reinstatement must be considered on its own merits and a decision must be made on a case-by-case basis, depending upon the facts involved. Yet, in spite of the recommendation of the hearing panel and the favorable testimony on petitioner's behalf, the gravity of the offense for which petitioner was convicted was adequate ground for denying reinstatement.

The question here is whether the Board's decision to refuse reinstatement was based upon substantial competent evidence or was arbitrary and capricious. Appellant criticizes the Board's final order because it did not list as findings of fact the factors that it relied upon in denying the application. As examples, appellant points out that the Board stated that appellant did not exhibit an understanding of the serious nature of his prior misconduct but did not list this as a finding of fact. Furthermore, the Board

stated that appellant's efforts at rehabilitation were done to satisfy the Board and not to improve his professional skills. The Board also characterized appellant's proposal that he would not treat patients for obesity and depression as avoidance of his past problems rather than an attempt at rehabilitation. None of these decisions is stated as a finding of fact.

In its final order denying reinstatement, the Board included a section entitled "Matters Officially Noticed," which discusses the grounds for the prior revocation. It points out that appellant had committed 5 instances of unprofessional conduct against 5 patients under his care and 26 instances of professional incompetence against 12 patients under his care, all in violation of the Healing Arts Act. The acts of unprofessional conduct involved appellant's failure to adequately document his patients' needs for Schedule II controlled substances. The five acts of professional incompetence are contained in the final order revoking appellant's license; appellant was given an opportunity to rebut or contest this material but did not. The Board listed six findings of fact, as follows:

"1. Petitioner filed an application for licensure with the Board of Healing Arts on August 11, 1989. The application is for a license to practice medicine and surgery.

"2. Petitioner truthfully answered questions on the license application regarding previous disciplinary matters before the Board.

"3. Petitioner's license to practice medicine and surgery was revoked by the Board on May 6, 1988.

"4. Petitioner's acts of unprofessional conduct were stated as grounds for revoking Petitioner's license.

"5. Petitioner's acts of professional incompetency were stated as grounds for revoking Petitioner's license.

"6. Since May 6, 1988, Petitioner has read medical journals, reviewed medical files, and taken an unspecified number of correspondence courses."

The Board listed seven conclusions of law, summarizing the contents of the Healing Arts Act. The Board then stated:

"NOW IT IS THEREFORE ORDERED that petitioner's application for reinstatement be denied. The Petitioner has not exhibited an understanding that the prior acts for which his license was revoked are serious in nature and inconsistent with the Kansas healing arts act. Without this understanding about his misconduct, it appears that statements made by Petitioner indicating rehabilitation are made to satisfy the Board, and are not aimed at improving his professional skills. Petitioner's willingness to adhere to the California Medical Society guidelines for use of controlled substances and

his desire not to treat depression and obesity, which are practice areas involved in the revocation proceedings, indicates avoidance of the past problems rather than attempts at rehabilitation."

These reasons rest primarily upon the same grounds as used for appellant's initial revocation.

The Board's brief enumerates many reasons to support the decision to not reinstate appellant's license. The application for reinstatement was filed less than 15 months following the effective date of the final order revoking appellant's license. Appellant has received notice from the State of California that an effort will be made to revoke his license in that state, although apparently the ground for this revocation is the loss of his license in Kansas. The Board points out that appellant was the subject of a previous action to suspend, which was terminated when the district court found the hearing conducted by the Board violated appellant's due process rights.

Appellant included as part of the application for reinstatement a copy of the denial of an application for professional liability insurance, which apparently will not be issued as long as appellant's license is revoked. Appellant also indicated that he has concluded 50 hours of continuing medical education, but the Board criticized him for not providing documentation that this has been completed since the date of the revocation and for not attending on-site programs. Appellant testified that his participation in such programs was limited because his license has been revoked. The Board also criticized appellant's response to questioning about prescribing controlled substances and his reliance upon guidelines developed by the California Medical Association. Finally, the Board asserts that the record is devoid of any evidence of appellant's rehabilitation that would rectify the unprofessional conduct and professional incompetence that were the grounds for the revocation of his license.

The summary of the evidence by the Board in its brief is one-sided. Yet, in considering whether substantial evidence supports the decision of the trial court, this court must accept the evidence as true and all such inferences to be drawn therefrom that support the findings of the court. Conflicting evidence must be disregarded. When the evidence is reviewed in the light most favorable to supporting the findings of the trial court, the record

contains sufficient evidence to support the decision of the court upholding the actions of the Board. Furthermore, the trial court is correct in finding that the Board's decision was not arbitrary and capricious. There is no Kansas statute that precludes consideration of the grounds for the initial revocation in denying reinstatement. On the contrary, appellant, upon seeking reinstatement, has an even greater burden than when he was initially granted a license because he must overcome the prior finding by the Board as to his fitness to practice medicine. The conduct which results in the revocation of a license to practice medicine may be so serious in and of itself as to preclude reinstatement. Although the Board does not have specific guidelines promulgated by the legislature to guide its decision specifically in considering reinstatement, the statute anticipates that, in determining whether a license will be reinstated, the Board will consider the grounds for revoking a license as well as the stated purpose of the Act. Here, the Board considered all the evidence and concluded that reinstatement was not appropriate at this time. We find that the Board did not act arbitrarily or capriciously in refusing to reinstate appellant's license.

The judgment of the district court is affirmed.