No. 87,713

IN THE MATTER OF THE APPEAL OF TIMOTHY S. GATES FROM A DECISION OF THE REAL ESTATE COMMISSION OF THE STATE OF KANSAS

(46 P.3d 1206)

Opinion filed June 7, 2002 .

*Jeffrey A. Wietharn,* of Coffman, DeFries & Nothern, of Topeka, argued the cause and was on the briefs for appellant.

*Anne Lamborn Baker,* of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, argued the cause, and *Evelyn Z. Wilson,* of the same firm, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The Kansas Real Estate Commission (Commission) denied the application of Timothy S. Gates for issuance of a real estate license as a salesperson. Gates appealed the Commission's denial to the district court, which affirmed. Gates appealed to the Court of Appeals. The court transferred the case. K.S.A. 20-3018(c).

Gates argues on appeal that the Commission's decision is not supported by substantial evidence; is contrary to undisputed evidence; and is unreasonable, arbitrary, or capricious.

The Commission's final order denying Gates' application for licensure is dated January 10, 2001. The final order states:

"1. Applicant was first licensed as a salesperson by the Commission in July 1994. This license was placed in the inactive status in March 1996, and expired on June 30, 1997.

"2. On March 28, 1996, Applicant pleaded guilty to a felony in the United States District Court for the Southern District of Texas. The crime for which Applicant was convicted was possession, with intent to distribute, approximately 560 pounds of marihuana, a violation of 21 U.S.C. § 841(b)(1)(B). As a result of the plea of guilty, six other counts were dismissed on the motion of the government.

"3. Applicant was fined $10,000 and sentenced to imprisonment for a period of 37 months. He was incarcerated for 20 months, and is now on supervised release for a period of five years beginning October 9, 1998.

"4. Applicant has previously sought reinstatement of his license. By Final Orders of the Commission dated August 18, 1998 and April 12, 1999, reinstatement has been denied.

"5. The Commission concludes that the privilege of a real estate license, either as a broker or as a salesperson, requires the public trust. Applicant has lost that public trust through his conduct that resulted in the felony conviction. The Commission must consider this conviction in determining whether to grant Applicant's license. *See* K.S.A. 58-3043. The burden is upon Applicant to show that he is sufficiently rehabilitated to warrant the public trust.

"6. In *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589 (1991), the Court approved several factors to consider in determining whether a person convicted of a felony is rehabilitated. Those factors should apply equally well to reinstatement of a real estate license, and in that regard include (1) the present moral fitness of the applicant; (2) the demonstrated consciousness of the wrongfulness of the conduct; (3) the extent of rehabilitation; (4) the nature and seriousness of the misconduct; (5) conduct subsequent to the misconduct; (6) the amount of time that has elapsed since the misconduct; (7) the applicant's character and maturity at the time of the misconduct; and (8) the applicant's current professional competence. In *Vakas*, the Court acknowledged that some conduct might be so serious in and of itself that reinstatement is precluded.

"7. In the present case, the Commission is mindful that Applicant's misconduct was extremely serious. The misconduct was not the result of sudden passion, nor was it simply a youthful prank gone awry. Applicant was part of a deliberate plan spanning several months to distribute illegal drugs. This plan was carried out without regard to the damage inflicted upon the public. Applicant does state that

he recognizes his actions were wrong, but his subsequent conduct does not demonstrate an earnest desire to return anything to society other than his participation in the real estate business.

"8. Given the seriousness of Applicant's misconduct and his subsequent conduct, the Commission finds that Applicant is not sufficiently rehabilitated to warrant the public trust."

Gates filed a petition for judicial review in district court. In a memorandum decision and order, the district court upheld the decision of the Commission. The district court stated:

"Petitioner contends the Commission erroneously interpreted and applied the law in this matter. Pursuant to K.S.A. § 58-3043, when determining whether to grant a real estate salesperson's license, the Commission is required to take into account the applicant's felony convictions. However, the statute grants the Commission broad discretion when considering such felony convictions. See K.S.A. § 58-3043(a)(1994).

"In the instant case, the Commission, in its Final Order, considered several factors, which are outlined in *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589 (1991), in determining whether Petitioner is sufficiently rehabilitated from his felony drug conviction to warrant the issuance of a real estate salesperson's license. Applying these factors, the Commission ultimately found Petitioner is not sufficiently rehabilitated to be issued a license. The Commission correctly interpreted the law and applied it within the bounds of its discretion. The Final Order is supported by substantial competent evidence, although contrary evidence is likewise contained in the record."

The scope of appellate review of the Kansas Real Estate Commission's action is governed by the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* Under the Kansas act, the court may grant relief if it determines, among other things, that the agency "has erroneously interpreted or applied the law"; or the agency action is "based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole"; or the agency action is "otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c). The arbitrary and capricious test may relate to the question whether the Commission's decision was without foundation in fact, as well as the reasonableness of its exercise of discretion. See *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 365, 770 P.2d 423 (1989). In *Vakas v. Kansas Bd. of Healing Arts*, 248 Kan. 589, 808 P.2d 1355

(1991), we noted that although Vakas challenged the Board's ruling as arbitrary and capricious, "this court has stated that arbitrary, oppressive, or capricious conduct is shown ' "where an order of an administrative tribunal is based upon findings which are not substantially supported by evidence in the record." ' [Citations omitted]" 248 Kan. at 603.

Gates contends that the Commission's decision is not supported by the evidence and is contrary to uncontroverted evidence. The Commission denied his application based on "the seriousness of Applicant's misconduct and his subsequent conduct." With regard to his subsequent conduct, the Commission stated that it "does not demonstrate an earnest desire to return anything to society other than his participation in the real estate business." Gates concedes the seriousness of his misconduct. On the subject of "his subsequent conduct," however, Gates contends that the record does not contain substantial evidence that would support the Commission's conclusion, assertedly based on his subsequent conduct, that he "is not sufficiently rehabilitated to warrant the public trust."

The record shows that Gates was born in May 1970. He got a real estate license in July 1994.

Two years earlier, in June 1992, he committed the federal offense of possession of approximately 560 pounds of marijuana. He pled guilty in March 1996 to the charge of possession of marijuana with intent to distribute. The judgment in Gates' criminal case shows that he pled guilty to Count 4 and that Counts 2, 3, 6, 10, 11, and 14 were dismissed on the government's motion. In June 1996, he was sentenced to 37 months' imprisonment, a $10,000 fine, and supervision upon release for 5 years.

In March 1996, at the time he pled guilty, Gates requested that his real estate license status be changed to inactive. His license expired June 30, 1997.

Gates was incarcerated from August 12, 1996, to April 16, 1998. He completed a residential drug abuse program while he was imprisoned. Then he was a resident in the Dismas House of Kansas City, Inc., a halfway house, from April 16, 1998 through October 9, 1998. Gates' individual case manager at Dismas House wrote to the Commission that, while he was a resident, Gates

"advanced to the highest level of achievement in our program. . . . He went directly to work in a family business and showed a strong desire to continue in that business. Mr. Gates attended all meetings as scheduled. He appears to be an honest and goal orientated [*sic*] person and we feel that he deserves an opportunity to pursue his goals . . . ."

In another letter to the Commission, Gates' case manager stated that Gates "has followed all rules, and has been respectful to all staff and residents."

On October 9, 1998, Gates began a 5-year supervised release, which will terminate on October 8, 2003. Gates is supervised by United States Probation Officer Michael Smith. There is an unsigned document dating from August 2000 in the record that states: "Mr. Smith informed me that he had no objection to an early release; he believes Mr. Gates has been successfully rehabilitated; and is not a threat to society. Additionally, he stated that Mr. Gates did not fit the classic profile for this crime."

Since being released from Dismas House in October 1998, Gates has applied to the Commission three times to become relicensed as a real estate salesperson. Each time, his application has been denied. The most recent denial is the one before the court. On August 11, 2000, the Commission issued an initial written order denying Gates' application on the single ground that he was convicted of a felony. Gates appealed the initial order of the Commission, and the Commission conducted a conference hearing. A transcript of the conference hearing is included in the record on appeal.

Gates testified that his conviction arose from an incident in which he helped wrap and load marijuana onto a truck. Later the truck was stopped and the marijuana was discovered. The offense occurred in June 1992, when Gates was 22 years of age. He was not indicted until February 1996.

By the beginning of 1994, according to Gates, he had decided to get out of the drug trade. He did not know how he was going to make the change until his grandmother, Agnes Gates, asked him to start working with her. Agnes Gates has been a real estate broker in Johnson County for many years. She believed in her grandson's ability, and he viewed her offer as a "great opportunity to move

on." He went to school and got his real estate salesperson's license and started working with his grandmother in 1994, sold off tools and equipment from his construction business, and moved his household to the Kansas City area in 1995. When he was indicted, Gates was no longer involved in the drug trade.

Since being released from prison, Gates again has been employed by his grandmother. He now performs secretarial duties and office management tasks and does some research with title companies and utilities.

Gates testified that after his second license application had been denied, he was advised to explore the possibility of getting his supervised release terminated early to improve his chances of getting a real estate license. His probation officer had no objection to early discharge from supervision. On September 28, 2000, the federal judge who sentenced Gates wrote to him:

> "I continue to receive inquiries regarding your application for a real estate license. It is my understanding that you ask that I relieve you from the supervised release term and that thereupon you will qualify to be licensed.
>
> "Upon receipt from a proper authority of a commitment that the above contingency will result in the issuance of the license I will consider the same as I deem it appropriate."

It is obvious from the Commission's initial order of August 11, 2000, that Gates was unable to supply the sentencing judge with the requested "commitment." The Commission's initial order on his third application denied his license application solely due to his conviction, with no mention of his supervised release period. Gates then requested a hearing pursuant to K.S.A. 58-3044.

Following that hearing and in keeping with its initial order, the Commission stated in the January 2001 final order on his third application: "In *Vakas*, the Court acknowledged that some conduct might be so serious in and of itself that reinstatement is precluded" The Commission expressed its view that Gates' misconduct was very serious in that it was a highly developed scheme to deliver illegal drugs, to the public detriment.

In addition to the seriousness of the misconduct, which was the only factor mentioned in the initial order, the Commission's final order includes a statement of the Commission's view that Gates'

subsequent conduct did not demonstrate that he was sufficiently rehabilitated to warrant the public trust. The Commission reportedly applied the *Vakas* factors in considering whether Gates' application should be granted. Of the eight *Vakas* factors, only three actually were mentioned by the Commission—seriousness of the misconduct, consciousness of the wrongfulness of the conduct, and subsequent conduct.

Seriousness of the misconduct is discussed by the Commission to the extent that we know what the misconduct consisted of and what it was about the misconduct that the Commission believed to be extremely serious. With regard to consciousness of the wrongfulness, the Commission wrote simply that "Applicant does state that he recognizes his actions were wrong." Actual subsequent conduct is not discussed by the Commission. We do not know even what subsequent conduct the Commission considered. We learn from the final order only that the Commission concluded that Gates' subsequent conduct did not demonstrate a desire to repay society for his misconduct.

What we know from the record of Gates' subsequent conduct is that he paid a $10,000 fine, that he served his prison time without incident, that he completed a drug abuse program, that he was viewed by his halfway house case manager as an exemplary resident who was honest and goal oriented, and that he is viewed by his probation officer as successfully rehabilitated. Based on these facts, the sentencing judge indicated he would "consider the same as I deem it appropriate" to shorten the term of Gates' supervised release if he were issued a real estate salesperson's license. The record of Gates' subsequent conduct is altogether positive.

The Commission, in its final order, stated that it used factors identified in *Vakas*. The Commission's reliance on *Vakas* is misplaced. In *Vakas*, the factors were "considered in determining whether a license to practice medicine should be reinstated." 248 Kan. 589, Syl. ¶ 2. Vakas' license had been revoked for his seriously substandard conduct in the practice of medicine. Vakas argued that because the Healing Arts Act lacked guidelines for reinstating a license to practice medicine, it was an unconstitutional delegation of legislative authority to the Board. The court agreed with the

Kansas Board of Healing Arts that factors identified in *State v. Russo*, 230 Kan. 5, 630 P.2d 711 (1981), which involved a disbarred attorney's application for reinstatement, were "just as relevant in determining if a license to practice medicine and surgery should be reinstated." 248 Kan. at 600. Russo surrendered his license for grave and unlawful conduct in his law practice. We said that conduct "is totally repugnant to the administration of justice and the duties of an attorney," and "strikes at the very heart of the criminal justice system and, if tolerated, could completely destroy our system of justice." *Vakas*, 248 Kan. 605. We further stated that "appellant, upon seeking reinstatement, has an even greater burden than when he was initially granted a license because he must overcome the prior finding by the Board as to his fitness to practice medicine. The conduct which results in the revocation of a license to practice medicine may be so serious in and of itself as to preclude reinstatement." 248 Kan. at 608. In this case, there is no allegation that Gates' criminal conduct was in any way related to his real estate practice. In fact, the conduct for which he was indicted occurred years before he obtained his real estate license.

Nor is Gates applying for reinstatement. His license was not revoked due to the felonious conduct. He allowed his real estate license to expire, he has taken and passed the examination, and he is applying for a license to engage in business as a real estate salesperson. Thus, the rules adopted by the Supreme Court for the admission of attorneys are more akin to Gates' circumstances than the factors identified in *Russo* as relevant considerations in determining whether a disbarred attorney should be reinstated to the practice of law. See Rule 702, Educational and Moral Qualifications for Admission to the Bar (2001 Kan. Ct. R. Annot. 539).

Neither *Vakas* nor *Russo* are applicable to the present case. In addition, there is no reason to look beyond the statutory factors to be used by the Real Estate Commission in determining whether to grant a license. K.S.A. 58-3043 provides:

"(a) In determining whether to grant a license the commission shall consider:

(1) Any revocation or suspension of a prior real estate license;

(2) whether an applicant has committed any of the practices enumerated in K.S.A. 58-3062, and amendments thereto, or has violated this act or rules and regulations adopted hereunder during the term of any prior license;

(3) any plea of guilty or *nolo contendere* to, or any conviction of: (A) Forgery, embezzlement, obtaining money under false pretenses, larceny, extortion, conspiracy to defraud or any other similar offense; (B) a crime involving moral turpitude; or (C) any felony charge; and

(4) such other matters as the commission deems pertinent.

"In its consideration of any such prior revocation, conduct or conviction, the commission shall take into account the nature of the offense; any aggravating or extenuating circumstances; the time elapsed since such revocation, conduct or conviction; the rehabilitation or restitution performed by the applicant; and such other factors as the commission deems relevant."

In Gates' case, there has been no revocation or suspension of a prior real estate license, Gates did not engage in any prohibited real estate practice, and the Commission did not identify any other matters it deemed pertinent. K.S.A. 58-3043(a)(1), (2), and (4). Gates pled guilty and was convicted of a felony. K.S.A. 58-3043(a)(3). With regard to a felony conviction, the statute requires the Commission to consider more than the fact that the applicant has been convicted. Thus, under the statute, granting of a license cannot be denied based solely on the seriousness of the offense.

In this case, the Commission considered the nature of Gates' offense to be very serious. Initially, it was the sole reason to deny him a license. As Gates points out, the final denial was not based solely on his felony conviction. Gates urged the Commission to consider several extenuating circumstances. He was young, in his early twenties, at the time he was involved in drug trade. He had gotten out of the drug business by the time he was 24. With regard to time elapsed, the offense Gates was convicted of occurred in June 1992, nearly 10 years ago. He paid a $10,000 fine in addition to serving a prison sentence. His conduct in prison and in the halfway house was commendable. He has mentors and supporters in real estate and development who express strong support for his licensure, and he has a family business in which to fully participate once he is licensed.

As we have seen, the Commission found that Gates was not rehabilitated. There are no facts in the record, however, that support the Commission's finding. In fact, the evidence relevant to rehabilitation tends to show that he now is a useful and law-abiding member of society. At oral argument, in response to a question

from the court, counsel for the Commission confirmed that the evidence the Commission relied on for concluding Gates was not rehabilitated was his continuing supervised release. Mr. Gates' supervised release is part of his original sentence. The fact that Mr. Gates is on supervised release is not, in and of itself, subsequent conduct of Gates. What Gates does while he is on supervised release would be subsequent conduct and could support a finding that he was not rehabilitated. The fact that he is on supervised release is not evidence to support such a conclusion. Supervised release is a factor that may be considered, but without more would not support the denial of a real estate license.

K.S.A. 58-3043(a) requires the Commission to balance Gates' conviction with other factors. It does not appear that the Commission did so. The determination regarding Gates' subsequent conduct is not substantially supported by evidence in the record. For this reason, we conclude that the Commission's decision was arbitrary and unreasonable.

The judgment of the district court is reversed, and this case is remanded to the Kansas Real Estate Commission with directions to make findings of fact based on substantial competent evidence consistent with this opinion.